## PURDY v. POWERS.

A partnership is entitled to recover its assets applied by one partner to the payment of his debt, whether or not he has acted in bad faith towards his co-partners in making such application; and a recovery may be had though such partner be a plaintiff, and this, it seems, even at law.

It is immaterial, that the creditor receiving the assets in payment of a pre-existent debt, was ignorant that there were others in the firm beside the person with whom he dealt. Per Bell, J.

Where evidence had been given in such case, to show that the defrauded partner was not known to the defendant as a partner, the plaintiffs may prove he was generally known as such.

In error from the Common Pleas of Beaver county.

*Oct.* 7. Assumpsit by Powers and Lacock, partners, trading as William H. Powers. It appeared that in 1837 the plaintiffs entered into articles of partnership, by which Lacock agreed to become a special partner; but the act of Assembly on that subject was not complied with.

Purdy, the defendant, purchased sundry articles of merchandise from the store at which the firm conducted their business. Without the consent of Lacock, Purdy endorsed the amount of his debt as a credit upon a judgment he held against Powers; and the main question was whether this credit, by Powers's consent, of which there was some evidence, was a bar to the action.

The court was requested to charge, that if Powers was guilty of bad faith or misconduct towards his partner, in applying the assets

of the firm to his private debts, there could be no recovery in this action in which he was a plaintiff. BREDIN, P. J., negatived the proposition, and this was the only exception to the charge. His honour also left it to the jury to say whether the partnership was a dormant one, or whether Purdy knew Lacock was a partner.

The only exception to the evidence argued was: the defendant having examined witnesses to show that Lacock was not known as a partner, the plaintiffs called witnesses to prove (under objection) that he was generally known as a partner.

*Fetterman* and *Cunningham*, for plaintiff in error.—The evidence was merely hearsay, and, as such, irrelevant. But the main question is, can the action be sustained when, by the death of Lacock, it will survive to Powers, whose misconduct is the ground of the action: it is decided it cannot; Jones *v.* Yates, 9 Barn. & Cres. 532.

*Agnew,* contrà.—The evidence was merely corroborative after express proof of the partnership, from which the jury might infer knowledge; Allen *v.* Rostain, 11 Serg. & Rawle, 363. The verdict has established that Lacock was not a dormant partner, and that Purdy knew that fact. After this the remaining question is beyond argument; Tanner *v.* Hall, 1 Barr, 418; Noble *v.* McClintock, 2 Watts & Serg. 152; Evernghim *v.* Ensworth, 7 Wend. 326; Mercein *v.* Andrus, 10 Wend. 461. Jones *v.* Yates was an action of deceit; and a different rule is stated in Coll. Part. 384.

*Oct.* 14. BELL, J.—It is admitted, that here was an attempted application by Power, one of the partners, of a debt due to the firm of which he was a member, in payment of his separate debt; and the jury having negatived the allegation of assent of the other partner, Lacock, to this appropriation, the principal question presented for decision is, whether an action at law can be sustained in the partnership name to recover the debt sought to be misapplied. On the authority of the English case of Jones *v.* Yeates, decided by the Court of King's Bench, 9 Barn. & Cres. 532, the plaintiff in error contends the action will not lie: because, as it is said, there is no instance in which a person has been allowed as a plaintiff, in a court of law, to rescind his own act for his own benefit, on the ground that such act was a fraud on some other person, and this whether the party seeking to do so, sue in his own name only, or jointly with another. It is true it was so held in the case cited. Two suits were brought in the name of a firm: one

2 T

in trover for certain bills of exchange, passed away by one of the partners in satisfaction of his private debt; and the other in assumpsit to recover sums of money drawn by him from the partnership funds, and similarly misapplied.    The plaintiffs were nonsuited on the grounds just stated; and because, said Lord Tenterden, if the defrauded partner should die, the action, if permitted, would survive to him who had been guilty of the fraud, who might sue alone, and thus, for his own benefit, avoid his own act by alleging his own misconduct.    But it was added, the injured partner might, perhaps, have a remedy in equity, by a suit in his own name, against his partner, and the person with whom the fraud was committed.    Of this I conceive there can be no doubt, for otherwise there would be a wrong inflicted without a correspondent remedy; and this not only to the injury of the innocent partner, but also, where the firm, as here, is insolvent, to the creditors of the partnership, who have a prior right to the application of the joint effects in discharge of their claims.    Administering equitable remedies through the medium of common-law forms, our courts would, in all cases, if necessary, permit an action in the name of the partners to prevent a failure of justice, though, in form, it might present the incongruity of a party suing on the ground of his own *mala fides;* for, wanting a court of chancery, we never permit a clear right to be defeated by the difficulty of moulding the form of the action upon the exigencies of the particular case.

But, I conceive, it is not necessary, in the present instance, to assume the equitable ground, to found an answer to the objection made by the defendant below.    This action does not proceed upon a suggestion of *mala fides,* or imputed fraud in one of the parties, but upon the foot of the original claim, springing from the debt contracted with the firm in the usual course of dealing; and, therefore, there is nothing standing in the way of the action which requires to be rescinded.    The effort was to apply this debt, so due, in payment of the private debt of the assenting partner, by endorsing it as a credit on the bond held by the defendant below. But with us it is settled beyond controversy, that a partner has no power to bind his fellows by such a transaction without their knowledge and assent.    The act is simply void.    It does not operate to discharge the debt, or to change the relative liabilities of the parties.    Nor is it permitted to interfere with the form of the action prescribed by the rule of law, as will be seen by consulting the cases.    This doctrine was expressly recognised by our own

case of Noble *v.* McClintock, 2 Watts & Serg. 152; and an action of assumpsit in the name of a firm, to recover a partnership debt, misapplied by one of the partners in discharge of his individual liabilities, was sustained without objection. So in Tanner *v.* Hall & Easton, 1 Barr, 417, it is said, it is not doubted that a partner cannot pay his separate debt with the joint funds, though the creditor may not suspect a misapplication; for the wrong may be redressed without prejudice to any one. In New York the determinations are to the same effect. Thus, in Evernghim *v.* Ensworth, 7 Wend. 326, it was held, that a debt due to a firm cannot be discharged by one of the partners applying it in payment of his sole debt due to the debtor of the firm; and an action to recover it, brought in the name of all the partners, was unimpeached on that ground. So in Gram *v.* Stewart & Caldwell, 5 Cow. 489, it was decided, that a release by one partner of a partnership claim in payment of his sole debt was void, and could not be set up in bar of an action brought by the firm to recover the debt so pretended to be discharged. These cases proceed on the ground that the fraudulent attempt of one member of the firm so to misapply a credit belonging to all, operates not upon the title of the partnership; and the rights of the parties remaining as before, there is nothing to rescind. It is difficult to reconcile the American, with the English decisions, so far as remedy is involved, unless it can be done on this foot; but should they be thought to clash, we prefer the rule sanctioned by our own cases, as better calculated to subserve justice and advance right. It results, that the answer of the court below to the defendant's second point was, in the main, correct.

Little remains to be noticed. The error assigned in the first bill of exceptions was abandoned on the argument; and no difficulty is felt in disposing of the second. The defendant called a witness residing in the neighbourhood of the parties, to prove he had never heard of a partnership between the plaintiffs. This was done to found an inference, that the defendant below was also ignorant of this connection. Was it not, then, competent to the plaintiffs to give room for a counter-inference, by showing that other neighbours had heard of their association? But I do not put the point on this ground. It could not affect the plaintiff's right to recover, that the defendant below was aware of the existence of a partnership at the time he purchased the goods in question. There can be no pretence that Lacock was a dormant partner; and in the case of ostensible partners, the criterion, either for action or defence, is

not whether the party contracting had knowledge of the partnership, but whether the contract was with the partnership; and if the subject be within the scope of its business, this will be presumed, until the contrary is established; Alexander *v.* McGinn, 3 Watts, 220; Livingston *v.* Cox, antè. There can be no doubt that Power dealt in his character of partner with the defendant below, though he may have intended to misapply the debt thus contracted; and this brings the transaction within the rule just stated. Admitting, then, the evidence introduced to impute to the latter actual knowledge of the partnership to be irregular, it did no injury to him, and, therefore, furnishes no reason for reversing the judgment.

,Judgment affirmed.