## Michaels v. First National Bank of Scranton

30

Before Hoban, P. J., Eagen and Robinson, JJ.

*Edward A. Reilly* and *Michael R. Shehadi*, for petitioner.

*Charles H. Welles, 3rd*, for exceptant.

The facts appear from the following adjudication of:

HOBAN, P. J.—This is an action in assumpsit by a depositor against his bank to recover money paid out by the bank against depositor's account notwithstanding a stop-payment order against the check in question. Defendant denied any oral order to stop payment, admitted a written order, and pleaded release of liability against failure to obey the stop order and no damage. By reply plaintiff challenges the release as void for want of consideration, and avers complete loss of the amount charged against his account.

### Findings of Fact

1. Plaintiff, a depositor in defendant bank, on October 14, 1947, drew a check against his account in the sum of $388.15, payable to one M. S. Dahdah, and delivered the same to the payee.

2. On October 15, 1947, plaintiff went to the bank, inquired directions to the proper place to make stop-payment orders, went to the clerk assigned to receive such orders and orally informed the clerk that he, plaintiff, wanted to have payment stopped on the check referred to in finding no. 1.

3. The clerk, after calling the bookkeeping department and verifying the fact that the check had not

arrived, then informed plaintiff that he could stop payment on the check, handed plaintiff a card and said to him: "Sign this card."

4. Plaintiff signed the card without reading it.

5. The card signed by plaintiff reads as follows:

"REQUEST TO STOP PAYMENT OF CHECK

Time Rec'd.........10:00 A. M.        Oct. 15, 1947.

The...........Joseph Michaels..........requests

THE FIRST NATIONAL BANK OF
SCRANTON, PA.

to stop payment of a check drawn by the undersigned, described below.

Amount, $388.15....No. x        Date Oct. 14, 47

Payee        M. S. Dahdah

The undersigned agrees to hold the above Bank harmless and to indemnify it against any loss, expenses and costs resulting from nonpayment of the said check. Should the check be paid through inadvertence, accident or oversight, it is expressly agreed that the Bank will in no way be held responsible. The Bank receives this request upon the express condition that it shall not be in any way liable for its act should the check be paid by it in the course of its business.

Signed        Joseph Michaels

By............................

(See other side for additional information)

Authorized Signature."

6. The check arrived at defendant bank on October 17, 1947, coming by mail, went to the bookkeeping department, was there marked "paid" and charged against plaintiff's account.

7. One week later plaintiff received the cancelled check and immediately protested to the bank and demanded refund of the money paid out on the check.

8. Defendant bank tried to collect payment from its correspondent bank which had presented the check to defendant, but was unsuccessful.

9. Defendant bank thereupon refused to reimburse plaintiff for the amount paid out on the check.

### Discussion

There seems to be considerable difference of respectable opinion as to whether the releases from liability for failure to stop payment on orders such as presented here are good or are void for want of consideration or contrary to public policy. See Annotations, 9 A. L. R. 1069, 175 A. L. R. 79, 1 A. L. R. (2d) 1155.

One view, led off by Tremont Trust Co. v. Burack, 235 Mass. 391, 126 N. E. 782, and Gaita v. Windsor Bank, 251 N. Y. 152, 167 N. E. 203, holds that such releases or waivers in stop-payment orders are not void as against public policy, that there is no reason why the common-law liability of a bank may not be limited with the assent of the depositor, and that the rule of "freedom of contract" will be enforced.

In neither of these cases was the question of consideration for the release discussed or adjudicated.

The more recent case of Speroff v. First Central Trust Company, 149 Ohio 415, 79 N. E. (2d) 119, 1 A. L. R. (2d) 1150, represents an opposite and I think more nearly correct view. The Ohio court summarizes its holding in its own syllabus as follows:

"Under the reciprocal rights and obligations inherent in the relationship existing between a bank and its depositors, it is the duty of the bank to act in good faith and exercise reasonable care not to pay a check after receiving such an order from the drawer.

"A purported release from liability for inadvertency or oversight obtained by a bank from a depositor as a condition of such order to stop payment of a check is void for want of consideration and as against public policy and does not relieve a bank of its duty to act in

good faith and exercise reasonable care not to pay such check."

All of the cases agree that relationship between a bank and a depositor is that of debtor and creditor and that by long mercantile custom there have arisen mutual duties and obligations, among which is the obligation of the bank not to pay out money of the depositor on a check issued by the depositor in the face of an unequivocal order to stop payment. The courts have held that a bank in such a situation would pay the check at its peril and that this liability is founded on a good consideration.

But the Ohio case points out that when a stop-order or request by whatever name known, containing a release of liability against the payment by the bank through inadvertence, neglect or accident, is attempted to be added to the contract, this is something new, "an element that concededly had not previously existed in their relationship". The court points out that no benefit or consideration was received by plaintiff (depositor) as the promisor and no detriment was suffered by defendant bank as the promisee as the result of the new statement or release. In fact plaintiff promisor received not only no benefit, but actually suffered a detriment, and the promisor, the bank, suffered no detriment but received a benefit.

We agree with the reasoning as to consideration or the lack of it as expressed in the Speroff case, which reasoning we think applies with equal force to the purported release here.

Our appellate courts in Pennsylvania have not passed squarely upon the question. Counsel for defendant points to the case of Cohen v. State Bank of Philadelphia, 69 Pa. Superior Ct. 40. In that case the matter of consideration was not discussed or adjudicated. All that the case held was that under that particular factual situation the court could see no reason why plaintiff should not be bound by the terms

of the stop-order payment, but the court further went on to say that "We do not say that such an order would protect the bank under all circumstances". The case cannot be considered as authority for the situation as presented here.

In Weller v. The Broad Street National Bank, 15 D. & C. 321, Judge Lewis, of the Municipal Court of Philadelphia, held that a release similar to the one in this case was a mere gratuitous promise in return for the bank's agreement to do that which it is already under legal obligation to do, and was, therefore, unenforcible. Judge Lewis in arriving at his opinion considered the cases of Tremont Trust Co. v. Burack, supra, and Gaita v. Windsor Bank, supra.

I am somewhat dubious about the right of the court to say that such a release is against public policy, although the Ohio Supreme Court did so in the Speroff case, and the courts of California have likewise done so. See Hiroshima v. Bank of Italy, 78 Cal. App. 362, 248 Pac. 947. But the California cases are supported by a statute limiting the right of anyone to exempt himself by contract from responsibility for his own fraud, wilful injury to the person or property of another, or violation of the law, whether wilful or negligent. I apprehend that if this type of contract is to be held contrary to public policy, the legislature ought to say so by determining the public policy. I have no doubt, however, that the release, if considered as a contract, is without consideration.

There is another factor in this case which seems to me of importance. In the face of the common-law duty on the part of the bank to stop payment or pay at its peril, upon plaintiff's order, in a pleading to that effect the defense of release is an affirmative defense. When an affirmative defense is offered, the burden of establishing the facts sufficient in law to constitute a good defense is upon the one who puts it forward, in

this case defendant. If the release is to be considered good, the burden is, therefore, on the bank to show that the check was paid through inadvertence, accident or oversight, or that it was paid out in the course of its business. All we know from the testimony is that the check was paid two days after the stop order was placed with the proper officer at the bank. The cashier of the bank testified as to the routine handling of such orders, but there is no testimony offered from the cashier or anyone else as to just exactly what happened in this case. If we follow the usual rule we do in negligence cases, that the one who avers negligence has the burden of proving it, the burden then would be on the bank to show that it was negligent or that the payment was due to negligence rather than to deliberate intent. The situation is anomalous where a negligent actor attempts to relieve himself from the consequences of his own negligence by proving that he was negligent. So far as the proofs offered in this case go, payment in this case may just as well have been by deliberate order of some officer of the bank as by inadvertence or accident. I know of no presumption either of law or fact that will overcome the necessity of defendant coming forward with proof for its factual defense.

There can be no doubt from the testimony, accepting that of the plaintiff, that he made an oral demand upon the bank to stop payment of the check; that the only reason he signed the card containing the purported release was because he was told he had to do it in order to put his stop-payment order through.

Upon the whole case I think there is no doubt that the bank is liable. The question might have been entirely different if the stop-payment order had been received on October 17th and payment of the check made before the bank had reasonable opportunity to provide the usual normal safeguards against the payment of the check by tellers or the appropriate bookkeepers. What a bank is expected to do is to exercise

good faith and reasonable care in taking care of the accounts of its depositors. If it did that in such a situation, it could not be held liable, but it certainly owes no less than such a duty to its depositors and if it fails to exercise good faith and reasonable care, the bank ought to be held liable. In this situation a stop-order given to the bank two banking days prior to the presentation of the check for payment gives the bank every opportunity to take proper precautions to prevent payment of the check. If the bank passed the check through a failure to exercise properly these reasonable precautions, the bank is responsible.

### Conclusions of law

1. The purported release of liability for payment of plaintiff's check against a stop-payment order, which release is contained in the "Request to Stop Payment of Check", dated October 15, 1947, is without consideration and void.

2. The burden of proving that plaintiff's check against which payment was stopped was paid by defendant bank through inadvertence, accident or oversight, or was paid by it in the course of its business, as an affirmative defense is upon defendant, and defendant has failed to produce evidence to support this burden.

3. Plaintiff made on October 15, 1947, an unequivocal oral demand upon defendant bank to stop payment of the check in question.

4. Defendant bank did not exercise reasonable care under the circumstances to prevent the payment of the check.

5. Plaintiff is entitled to judgment in the sum of $388.15, with interest thereon from October 17, 1947.

The prothonotary is directed to give notice to the parties of the entry of this adjudication and judgment nisi, this judgment to become final unless exceptions are filed hereto within 30 days sec. reg.

## OPINION SUR EXCEPTIONS

HOBAN, P. J., March 10, 1950.—Defendant excepts to the trial judge's failure to find as a fact that the check in question was paid through inadvertance after the stop-payment order was received. The only evidence on this point is that given by the bank cashier, who testified that the stop order was received, that "to the best of his knowledge and belief" the customary signal was placed at plaintiff's ledger account, and two days later the check was paid.

Defendant argues that the only possible inference from this testimony was that payment was by inadvertence.

But as pointed out by the trial judge, the defense of payment by inadvertence is an affirmative one; therefore, defendant must by evidence establish facts sufficient in law to sustain it. Defendant here has established no facts except that a stop-payment order was entered and nevertheless the check was paid. But this is exactly the state of facts upon which plaintiff's case is built. If defendant's theory of evidence is correct, then no bank would ever be compelled to justify failure to comply with a stop-payment order with the comprehensive release clause, for on the mere assertion of plaintiff's facts, the bank could claim inadvertence, thus forcing plaintiff to disprove defendant's case before defendant proves its facts. This curious and illogical reasoning is an added illustration of the legal absurdity of attempting to exculpate oneself from the results of one's own negligence by pleading that same negligence as an excuse.

We are agreed that the release contained in the stop-payment order is void for want of consideration: Speroff v. First Central Trust Co., 149 Ohio 415, 79 N. E. (2d) 119. Cohen v. State Bank of Philadelphia, 69 Pa. Superior Ct. 40, is no authority to the contrary.

There is likewise competent evidence to justify the finding that plaintiff made an unequivocal oral demand on the bank to stop payment, and only signed the stop order and release under the belief that it was the only way to procure the action sought. On the oral demand alone, defendant would be obliged to stop payment or assume the risk incident to payment in disregard of the order.

Now, March 10, 1950, the exceptions are dismissed, and judgment is directed to be entered in favor of plaintiff and against defendant in the sum of $388.15, with interest thereon from October 17, 1947.