## Clemente v. Mellon National Bank and Trust Co.

Before Musmanno and Kennedy, JJ.

*Isadore A. Burnstein* and *Bailey & Critchfield*, for plaintiff.

*Reed, Smith, Shaw & McClay*, for defendant.

KENNEDY, J., December 5, 1951.—The above-captioned action in assumpsit arises out of the payment by defendant of a check on which plaintiffs claim they gave timely notice to stop payment. The jury returned a verdict in the sum of $383, which included interest to date of trial and the sum of $317, the amount for which the check was drawn.

Defendant has now moved for judgment n.o.v. or in lieu thereof for a new trial.

Plaintiffs had a joint checking account for many years where defendant bank had its East Liberty branch and also with its predecessor in title. On August 7, 1947, wife plaintiff drew a check post-dated to Monday, August 11, 1947, to the order of "Ray Contracting Company," and in the sum of $317. The check was deposited in another bank by the payee on August 8th; went through the clearing house channels to defendant for acceptance. It was stipulated by counsel that defendant did not receive the check until after 10:30 a. m., August 11, 1947. At about 8:45 a. m., August 11th, wife plaintiff telephoned defendant bank to stop payment and pursuant to the direction of the bank's agent came to the bank at 9 o'clock the morning of the same day to sign a confirmatory stop-payment order. This plaintiff further stated that she was directed to sign the filled in stop-payment order form twice and that she hurriedly did read the order form. She further testified that the paper which she signed did not have the word, "CANCELLED" in large type with a rubber stamp at the bottom of the form immediately above her second signature, when she signed.

The original instrument introduced into evidence by defendant in cross-examination of this wife plaintiff is as follows:

### "MELLON NATIONAL BANK AND TRUST COMPANY
Pittsburgh, Pennsylvania.

"Please stop payment on my check No. . . . . . . dated 8/11/47 in the amount of $317.00 to the order of Ray Contracting Co.

"If duplicate is presented, please pay and charge account.

"In requesting you to stop payment of this item the undersigned agrees to be legally bound by this notice and to hold the bank harmless for all expenses and costs incurred by the bank because of refusing payment of said item, and further agrees that you shall not be liable for payment of said item. Contrary to this request, if the same occur through mistake, oversight, inadvertance or accident, or if by reason of such payment other items drawn by the undersigned are returned because of insufficient funds.

"This stop payment order shall remain in effect for only one year from date hereof unless renewed in writing in accordance with the provisions of the Banking Code of the Commonwealth of Pennsylvania, as amended.

MARY ANN CLEMENTE [SEAL]
Mary Ann Clemente

"Address . . . . . . . . . . . . . . . . . . . . . . .
"9:00 A. M.           8/11/47
"Received by . . . . . . . . . . Bookkeeper's Slip . . . . . . . .
"Time Rec's . . . . . . Office . . . . . . Teller's Slip . . . . . .
8/11/47
CANCELLED
Mary Ann Clemente."

Plaintiff further testified that she and her husband had no knowledge that the stop-payment order had

been disregarded until they later received their bank statement and canceled checks showing that the check in suit had been honored by defendant bank.

Defendant's bank clerk, Mrs. Marshall, testified that she waited on plaintiff and that the stop-payment order form had been typed up when Mrs. Clemente arrived at the bank; that this plaintiff signed the stop-order form and then reconsidered and informed her, Mrs. Marshall, that she wished to cancel the stop order. This witness then stated she stamped the word "CANCELLED" and requested Mrs. Clemente to again sign under that word. Notice was then given to the bookkeeper and teller to disregard the former oral stop order.

This phase of the case therefore turned solely on the credibility of these two witnesses. The jury was carefully instructed that the fact that defendant bank retained the printed stop-payment order form, rather than destroying it after it, the bank, claimed same was canceled, was not to be considered by the jury as having any probative value favorable to plaintiff for the reason that banks are required to preserve all signed instruments having to do with business of depositors for a reasonable time. It is also argued by defendant that the original signed stop order appears to show that the "L" in Clemente in the second signature of the wife plaintiff is above part of the last line of "L" in the rubber stamp word "CANCELLED." No handwriting expert was called as to this, but counsel for defendant carefully pointed out this contention to the jury in its summation. The jury was told that if Mrs. Clemente canceled the stop-order its verdict should be in favor of defendant. The jury had the original with it during its deliberation and by its verdict did not subscribe to this contention.

The motion for new trial will therefore be refused.

The motion for judgment n.o.v. is based on the contention that the exculpatory language of the printed form relieves the bank of all liability. The words relied upon are as follows:

". . . the undersigned agrees to be legally bound, . . . and further agrees that you shall not be liable for payment of said item contrary to this request if the same occur through mistake, oversight, inadvertence or accident. . . ."

It is submitted by defendant that the Uniform Written Obligations Act of May 13, 1927, P. L. 985, binds plaintiffs even though no consideration was proven that brought about the signing of the printed stop form. This act provides as follows:

"A written release or promise, hereafter made and signed by the person releasing or promising, shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound."

The common-law liability of a bank, which is a quasi-public service institution, for its failure to honor a timely stop order on a check drawn by a depositor is well settled in Pennsylvania. See Wall v. Franklin Trust Company, of Philadelphia, 84 Pa. Superior Ct. 392. However, it has been held that it is not against public policy if there is consideration to support a depositor's promise, or "release" limiting a bank's liability. See Cohen v. State Bank of Philadelphia, 69 Pa. Superior Ct. 40 (1918).

A number of States, especially since they have adopted the "Uniform Written Obligations Act," have ruled that a stipulation releasing the bank from liability for paying as a result of inadvertence or accident, in spite of the stop-payment order, constitutes a valid contract which is not void as against public policy. See Michaels v. First National Bank of Scran-

ton, 73 D. & C. 29 (1950) 34; 175 A. L. R. 80; Hodnick v. Fidelity Trust Co., 96 Ind. App. 342, 183 N. E. 488 (1932); Tremont Trust Co. v. Burack, 235 Mass. 398, 126 N. E. 782 (1920); Gaita v. Windsor Bank, 251 N. Y. 152, 167 N. E. 203 (1929); Pyramid Musical Corp. v. Floral Park Bank, 268 App. Div. 783, 48 N. Y. S. (2d) 866 (1944); Edwards v. National City Bank, 150 Misc. 80, 269 N. Y. S. 637 (1934).

However, the defense in this case was that Mrs. Clemente had canceled the printed stop order which she had signed. She denied this and the jury found in plaintiff's favor, therefore it cannot be said that the check was honored "through mistake, oversight, inadvertence or accident." It must have been done wilfully and deliberately. The written release limiting liability of the bank and admittedly signed by wife plaintiff did not exonerate the bank from wilful and deliberate act of its accredited agents.

The motion for n. o. v. will also be denied in an appropriate order.